IN THE DISTRICT COURT OF BEAVER COUNTY, OKLAHOMA

CTF Ltd., )
Ronald E. Carlton and Judy L. Carlton, )
Richard A. Carlton and Catherine A. Carlton, )
Bruce D. Carlton and Catherine B. Carlton, )
and )
Lawrence J. Fechko, )
)
               Plaintiffs, )
)
v. )
)
Chesapeake Exploration LLC, )
Chesapeake Operating, LLC, and )
their affiliated entities, and )
ENCINO ENERGY, LLC )
ENCINO ACQUISITION PARTNERS, LLC )
ENCINO OPERATING, LLC, )
and their affiliated entities )
)
               Defendants. )

BEAVER COUNTY OKLAHOMA
**F I L E D**

DEC 18 2018

TAMMIE PATZKOWSKY
COURT CLERK
BY_____TP_____DEPUTY

Case No. CJ-2018-26

## PETITION

Plaintiffs CTF Ltd., Ronald E. Carlton, Judy L. Carlton, Richard A. Carlton, Catherine A. Carlton, Bruce D. Carlton, Catherine B. Carlton, and Lawrence J. Fechko ("Plaintiffs") bring claims for breach of lease against Defendants Chesapeake Exploration, LLC and Chesapeake Operating, LLC, and their affiliated entities, collectively referred to herein as "Chesapeake", and Defendants Encino Energy, LLC, Encino Acquisition Partners, LLC, and Encino Operating, LLC, and their affiliated entities, collectively referred to herein as "Encino". This Petition refers to Chesapeake and Encino collectively as "Defendants." Plaintiffs seek damages for past and present breach of lease and termination of lease in the future. In support of these claims, Plaintiffs state as follows:

### NATURE OF THE ACTION

1.    Plaintiffs bring claims for breach of their oil and gas leases, which are identical in their material terms, against Defendants. Plaintiffs' leases require payment of royalty based on "gross

**EXHIBIT 2**

proceeds" on full production, without deduction for costs incurred (monetary or in-kind) to prepare the gas for market. Defendants have improperly paid royalty on less than full production and deducted costs from royalty, in breach of the royalty provision in the leases. Plaintiffs seek recovery of the amounts improperly deducted, plus interest thereon at rate specified in the leases. Breach of the leases also constitutes a default under the leases, thereby entitling Plaintiffs to termination of the leases. In addition to damages and interest, Plaintiffs also seek termination of the leases.

## VENUE AND JURISDICTION

2. Plaintiff CTF, Ltd. executed an oil and gas lease with Chesapeake dated November 28, 2011, for acreage in Carroll County, Ohio. A true and correct copy of the "CTF Lease" is attached hereto as Exhibit A.

3. Plaintiffs Ronald E. Carlton and Judy L. Carlton executed an oil and gas lease with Chesapeake dated November 28, 2011, for 113.3050 +/- Leasehold acres in Carroll County, Ohio. A true and correct copy of the "Ronald Carlton Lease" is attached hereto as Exhibit B.

4. Plaintiffs Richard A. Carlton and Catherine A. Carlton executed three oil and gas leases with Chesapeake: (a) the first is dated April 8, 2011, covering 173.29 +/- Leasehold acres; (b) the second is dated November 28, 2011, covering 12.6 +/- Leasehold acres; and (c). the third is dated November 28, 2011, covering 7.7 +/- Leasehold acres. All of the Leasehold acres are in Carroll County, Ohio. True and correct copies of the "Rick Carlton Leases" are attached hereto as Exhibits C, D, and E, respectively.

5. Plaintiffs Bruce D. Carlton and Catherine B. Carlton executed an oil and gas lease with Chesapeake dated April 15, 2011, covering 36.88 +/- Leasehold acres in Carroll County, Ohio. A true and correct copy of the "Bruce Carlton Lease" is attached hereto as Exhibit F.

6. Plaintiff Lawrence J. Fechko and his now deceased wife Valjean A. Fechko executed three oil and gas leases with Chesapeake, all with the effective date of October 31, 2011, for acreage in Carroll County, Ohio. True and correct copies of the three "Fechko Leases" are attached hereto as Exhibits G, H, and I, respectively. Mr. Fechko now is the sole Lessor under the Fechko Leases.

7. All of the Plaintiffs' Leases, Exhibits A through I, are of the same form and, except for bonus and royalty rates, contain the same material terms.

8. On or about November 5, 2018, Chesapeake assigned Plaintiffs' Leases, and the wells operated under them, to Defendant Encino Acquisition Partners, LLC, as part of the $2 billion sale of its Ohio Utica Shale assets.

9. This Court has jurisdiction over Defendants in that some of their wrongful acts to Plaintiffs occurred from Oklahoma. Defendants Chesapeake Exploration, LLC and Chesapeake Operating, LLC are subject to general jurisdiction in Oklahoma as their principal place of business is located in Oklahoma.

10. Encino operates wells in Beaver County, Oklahoma through its affiliate Encino Operating, LLC.

11. Venue is proper in this Court for one or more of the following reasons: (i) during all or part of the time that Chesapeake was underpaying Plaintiffs, Chesapeake owned and/or operated wells and leases in this County, had the right to and did use well sites and buildings in this County; and (ii) Encino owns and/or operates wells and leases in this County, has the right to and did use well sites and buildings in this County.

## PARTIES

12. Plaintiff CTF Ltd. is Lessor under the CTF Lease.

13. Plaintiffs Ronald E. Carlton and Judy L. Carlton are Lessors under the Ronald Carlton Lease.

14. Plaintiffs Richard A. Carlton and Catherine A. Carlton are Lessors under the Richard Carlton Leases.

15. Plaintiffs Bruce D. Carlton and Catherine B. Carlton are Lessors under the Bruce Carlton Lease.

16. Plaintiff Lawrence J. Fechko is the Lessor under the Fechko Leases.

17. Except for bonus and royalty rates, all of the Leases have the same material terms.

18. Defendant Chesapeake was the Lessee under each of the Leases from their execution in 2011 to their assignment to Encino on November 5, 2018.

19. Encino is now the Lessee under the Leases and operates the wells under the Leases.

20. Defendant Chesapeake Exploration, LLC is a limited liability company organized under the law of Oklahoma; it maintains its principal place of business in Oklahoma. It is the original Lessee under the Leases. Its members are (i) Chesapeake Operating, LLC; (ii) Chesapeake E&P Holding Corporation; and (iii) Chesapeake Appalachia, LLC. Defendant can be served by serving The Corporation Company, 1833 S. Morgan Rd., Oklahoma City, OK 73128.

21. Defendant Chesapeake Operating, LLC is a limited liability company organized under the laws of Oklahoma; it maintains its principal place of business in Oklahoma. It operates the wells covered by and pays royalty due under the Leases. Its sole member is Chesapeake Energy Corporation, a publicly traded corporation organized under the law of Oklahoma. Chesapeake

4

Energy Corporation has its principal place of business in Oklahoma. Defendant can be served by serving The Corporation Company, 1833 S. Morgan Rd., Oklahoma City, OK 73128.

22. Chesapeake E&P Holding Corporation is a privately traded corporation organized under the laws of Oklahoma. Its principal place of business is in Oklahoma. It is wholly owned by Chesapeake Energy Corporation, a publicly traded corporation organized under the law of Oklahoma.

23. Chesapeake Appalachia, LLC, is a limited liability company organized under the laws of Oklahoma; it maintains its principal place of business in Oklahoma. It is wholly owned by Chesapeake Energy Corporation, a publicly traded corporation organized under the law of Oklahoma.

24. Upon information and belief, as of November 5, 2018, Defendant Encino Acquisition Partners (EAP), through its general partner Defendant Encino Energy, LLC and its affiliate Encino Operating, LLC, is the current Lessee under the Leases and operates the wells under the Leases.

25. Defendant Encino Acquisition Partners, LLC is believed to be a Delaware limited liability company with its principal place of business in Houston, Texas. It can be served with process by serving its registered agent J Hardy Murchison at 657 Bering Drive, Suite 360, Houston, Texas 77057.

26. Defendant Encino Energy, LLC is believed to be a private oil and gas operating company with leasehold and mineral interests in multiple U.S. basins. It is believed to be a Texas limited liability company with its principal place of business in Houston, Texas. It is believed to be a general partner of Defendant Encino Acquisition Partners, LLC. It can be served with process by serving its registered agent John H. Murchison at 5219 Briar Drive, Houston, Texas 77056.

27. Defendant Encino Operating, LLC is believed to be a Texas limited liability company with its principal place of business in Houston, Texas. It operates oil and gas wells in Beaver County, Oklahoma and elsewhere within the United States. It can be served with process by serving the Oklahoma Secretary of State at 421 NW 13th St., Suite 210, Oklahoma City, Oklahoma 73103.

28. Defendants are in the business of producing and marketing gas and constituent products under the Leases.

29. The acts charged in this Petition as having been done by Defendants were authorized, ordered, or done by officers, agents, employees, or representatives, while actively engaged in the conduct or management of Defendants' business or affairs, and within the scope of their employment or agency with Defendants.

## THE LEASES – PAYMENT OF ROYALTY

30. The Leases provide for royalty to be paid on "Gross Proceeds" of the total gross production of all oil, gas, casinghead gas, and casinghead gasoline applicable to each well without deduction for the costs of production or gas utilized. Article III, Section 2 provides in pertinent part and with emphasis added:

> 2. **Royalty Payment**
> (a) _Percentage_. The royalties payable to the Lessor under this Lease shall be on a well by well basis. As to each and every well completed as a producer of oil and/or gas on the Leased Premise or on lands pooled therewith, the **royalties to be paid to Lessor shall be twenty percent (20%) of all the oil, gas and casinghead gas and casinghead gasoline removed or recovered from the Leased Premises** or, at Lessor's option (which shall be presumed to be exercised unless Lessor advises Lessee to the contrary prior to any applicable production month) the **Gross Proceeds (as hereinafter defined in paragraph (d)) of the total gross production attributable to the applicable well.**
>
> (b) _Determination of Royalty Amount_
> Lessee covenants and agrees:

(i) To sell and execute division orders for the sale of all oil, condensate, casinghead gasoline and liquid hydrocarbons produced and saved by Lessee from the Leased Premises, including Lessor's share with Lessee's share and shall pay Lessor royalty (in accordance with paragraph (a) above), where applicable, based on the Gross Proceeds paid to Lessee from the sale. From time to time, at the option of Lessor, to deliver or cause to be delivered to the credit of Lessor, in the pipeline or tanks to which Lessee may connect its wells, percentages (in accordance with paragraph (a) above) of all oil, condensate, casinghead gasoline and liquid hydrocarbons produced and saved from the Leased Premises;

(ii) To pay Lessor on gas and casinghead gas produced from the Leased Premises, percentages of proceeds (in accordance with paragraph (a) above) based on:

(1) the Gross Proceeds paid to Lessee from the sale of such gas and casinghead gas when sold by Lessee in an arms-length sale to an unaffiliated third party, or if sold to an affiliate, the price upon which such gas and casinghead gas was sold so long as such price is not less than that which would be received from a sale to an unaffiliated third party in an arms length transaction considering the volume available, quality, location and length of term for the proposed sale; or,

(2) the market value at the point of use, when used by Lessee.

(iii) To pay Lessor on all other byproducts and/or constituents sold or utilized by Lessee from the Leased Premises, in accordance with paragraph (a), the percentages of the Gross Proceeds received by Lessee.

(c) Affiliates. For purposes of this Lease, an "Affiliate of Lessee" is any corporation, firm or other entity in which Lessee, or any parent company, subsidiary or affiliate of Lessee, owns an interest of more than ten percent (10%) whether by stock ownership or otherwise, or over which Lessee or any parent company or Affiliate of Lessee exercises any degree of control, directly or indirectly, by ownership, interlocking directorate, or any other manner; and any corporation, firm or other entity which owns any interest in Lessee, whether by stock ownership or otherwise, or which exercises any degree of control, directly or indirectly, over Lessee, by stock ownership, interlocking directorate, or in any other manner.

(d) Gross Proceeds. For purposes of this Lease, "**Gross Proceeds" means the total consideration paid for the sale of oil, gas, casinghead gas, casinghead gasoline, associated hydrocarbons, and**

**marketable by-products, produced form the Leased Premises** or payments for future production or delivery of production at a future time, or sums paid to compromise claims relating to payment obligations associated with the sale of oil, gas, casinghead gas, casinghead gasoline, associated hydrocarbons, and marketable by-products with the following exceptions:

(i) If gas produced from the Leased Premises is processed for the recovery of liquefiable hydrocarbon products prior to sale, and if such processing plant is not owned by Lessee or any Affiliate of Lessee, Lessor's royalty shall be calculated based upon the consideration paid to Lessee from Lessee's sale of such liquefiable hydrocarbons and residue gas.

(ii) If gas produced from the Leased Premises is processed for the recovery of liquefiable hydrocarbon products prior to sale, and if such processing plant is owned by Lessee or any Affiliate of Lessee, the price upon which royalty shall be based shall not be less than that which would be obtained from an unaffiliated third party processor in an arms length transaction involving similar gas volumes, quality, location and length of term of the contract.

(iii) If oil or gas production from the Leased Premises is produced [sic] in a plant for the extraction of gasoline, hydrocarbons or other products, the value of the Gross Production [sic] shall, for purposes of determining royalty due, never be less than if such gas had not been processed.

(iv) Lessee shall pay to the Lessor royalty at the applicable royalty rate (paragraph (a)) on any monetary settlement received by Lessee from any breach of contract by Lessee's purchaser relating to the marketing, pricing, or taking of oil or gas production from the leased premises.

(e) <u>Costs of Production.</u> Lessee shall place oil and gas produced from the Leased Premises in marketable condition and shall market same as agent for Lessor. Except as expressly provided in (d) above, **Lessor's royalty shall not be charged directly or indirectly with any expense required to make gas marketable, including but not limited to the following: expenses of production, gathering, dehydration, compression, manufacturing, processing, treating, transporting or marketing of gas, oil, or any liquefiable hydrocarbons extracted therefrom.**

31. Despite the requirement in the Leases that royalty be paid based on Gross Proceeds, on full production, and without deduction of any costs associated with Gathering, Compression,

8

Dehydration, Treatment, and Processing (GCDTP), Chesapeake paid royalties on "net proceeds", deducting both fuel and GCDTP costs before calculating and paying royalty. Upon information and belief, Encino will continue this practice of paying royalties on the "net" rather than "gross" proceeds.

32. Article III, Section 2(f) of the Leases specifies the time frames within which Lessee must pay the royalty due under the Leases: "Royalties not paid when due shall bear interest at the prime rate as published by the Wall Street Journal as of the date payment is first due, plus five percent (5%) per annum."

33. Article III, Section 2(g) further provides in pertinent part:

> (g) <u>Delinquency in Payment.</u> If royalty is not paid by the date due, Lessor may give Lessee written notice of nonpayment of royalty, by certified mail, return receipt requested, and if Lessor's royalty is not paid on or before expiration of forty-five (45) days after Lessee's receipt of such notice, interest shall commence accruing on the due date and be payable by Lessee to Lessor on the delinquent balance at the rate of five percent (5%) per annum above prime interest rate (as defined above). However, Lessee may avoid any interest obligation if prior to the expiration of such forty-five (45) days Lessor is furnished with an attorney's written opinion citing a bona fide dispute or a good faith question of royalty entitlement (either as to ownership or amount), Lessee pays to Lessor the undisputed portion and Lessee pays the disputed royalty into an escrow account to be administered by a trustee agreed to by both parties or by the American Arbitration Association, if such trustee cannot be found. If practical, such escrow funds shall be invested in interest-bearing accounts pending resolution of the entitlement issue, with the interest to follow the distribution of escrow.

34. As detailed below, Plaintiffs provided notice of nonpayment of royalty, by certified mail, return receipt requested, to Chesapeake.

35. Chesapeake did not pay the disputed royalty amounts within forty-five days of receipt of Plaintiffs' respective notices.

36. In exchange for waiver of Plaintiffs' right to demand placement of the disputed royalty amounts into interest-bearing escrow accounts, Chesapeake waived its right to demand

arbitration of this dispute under the Leases. This lawsuit is a continuation of the dispute over delinquency in royalty payments owed to Plaintiffs.

## COMPLIANCE WITH PRE-SUIT NOTICE

37.     Article II, Section 9 of the Leases requires pre-suit notice:

> [9](b) <u>Notice of Default or Breach of Lease.</u> In the event Lessor considers that Lessee is in default under this Lease or that Lessee has not complied with its obligations hereunder, both express and implied, including the non-payment of royalty or rent, Lessor shall notify Lessee in writing, setting out specifically in what respects Lessee is in default or Lessee has breached this Lease. Lessee shall then have forty-five (45) days after the date of receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor, or to correct any default. The service of said notice shall be precedent to the bringing of any claim or action by Lessor on this Lease for any cause, and no such claim or action shall be brought until the lapse of forty-five (45) days after service of such notice on Lessee. Neither the service of said notice nor the doing of any acts by Lessee aimed to meet all or any of the alleged breaches or the default shall be deemed an admission or presumption that the Lessee has failed to perform all of its obligations hereunder.

38.     Plaintiffs CTF Ltd and the Carltons provided notice of default or breach of lease by letter sent by certified mail, return receipt requested, to Chesapeake on October 31, 2017. This letter includes the damages calculation of an expert whom Plaintiff CTF Ltd. hired to audit Chesapeake's royalty payments. That damages calculation determined that Chesapeake underpaid Plaintiff CTF Ltd. by millions of dollars from October 2013 to December 2016, with damages continuing to accrue after that date.

39.     Plaintiff Fechko sent a similar letter to Chesapeake on April 10, 2018. This letter includes the damages calculation of an expert whom Plaintiff Fechko hired to audit Chesapeake's royalty payments. That damages calculation determined that Chesapeake underpaid Plaintiff Fechko by hundreds of thousands of dollars from June 2013 to February 2017, with damages continuing to accrue after that date.

40. More than forty-five days from the date Chesapeake received the written Notice Letters have lapsed.

41. Chesapeake has not cured the default, but instead assigned the Leases to Encino, who is now bound by the terms of the Leases as if it were the original Lessee. See Leases, Article VII, Section 7.

42. Plaintiffs have complied with the pre-suit notice provision in the Leases.

### COUNT I—BREACH OF LEASE AGAINST DEFENDANTS

43. Plaintiffs incorporate by this reference the allegations in paragraphs 1- 42.

44. Plaintiffs entered into written, fully executed, oil and gas leases with Chesapeake, which expressly require Chesapeake, and now Encino, to pay royalty on Gross Proceeds, on full production, and without deductions.

45. Chesapeake has not paid royalty to Plaintiffs and the Class on Gross Proceeds, on full production, and without deductions, thereby breaching the Leases. Upon information and belief, Plaintiffs allege Encino will continue Chesapeake's improper royalty payment practices, thereby also breaching the Leases.

46. At all material times, Plaintiffs have performed their terms and obligations under the Leases.

47. Defendants breached the Leases by their actions and/or inactions.

48. As a result of Defendants' breaches, Plaintiffs have been damaged through underpayment of the actual amounts due.

## COUNT II—TERMINATION AGAINST ENCINO

49.   Plaintiffs incorporate by this reference the allegations in paragraphs 1 through 48.

50.   Section 7 of Article VII of the Leases provides: "Each assignee of all or any portion of the rights of Lessee hereunder agrees to be bound by the provisions of this lease to the same extent as if such assignee were an original party to this Lease. Notwithstanding any assignment by Lessee of a segregated portion of this Lease, default by Lessee or any assignee or subassignee of Lessee in any covenant or condition in this Lease shall constitute default as to the entire Lease."

51.   Section 13 of Article III of the Leases provides: "Failure of Lessee to timely pay Lessor any amounts required under this Lease shall be deemed a default by Lessee."

52.   Defendants' failure to timely pay royalties is deemed a default by Lessee under the Leases.

53.   Per Article II, Section 9(c) of the Leases, breach of lease after notice and an opportunity to cure entitles Plaintiffs to terminate the Leases:

> [9](c) <u>Termination for Default.</u> Upon the occurrence of the event of default, and after notice thereof and opportunity but failure to cure or commence to cure as set forth above, the Lease shall be terminated and the Lessee shall become a tenant at will for the conduct of operations on the Leased Premises. If evicted, Lessee agrees to surrender possession of the Leased Premises, or of the portion of the Leased Premises included in such termination. If Lessee should fail to deliver documents reflecting termination or expiration of this Lease or if Lessee fails to surrender possession of the Leased Premises as required under the Lease, Lessor may institute proceedings necessary to clear title or to take possession, and in that event, in addition to all other relief that may be granted to Lessor, Lessor shall be entitled to recover against Lessee all attorney fees, investigation charges, court costs and expert fees thus expended by Lessor.

54.   Pursuant to Article II, Section 8 of the Leases, Plaintiffs demand that Defendants promptly deliver a plat showing the designated production units around each well and a partial

release containing a description (metes and bounds and map) of the acreage and depths not retained, in a form suitable for recording.

55. Pursuant to Article II, Section 8, of the Leases, Plaintiffs demand Defendants peaceably surrender the released premises to Lessors.

56. Pursuant to Article II, Section 8, Plaintiffs demand that Defendants provide them documentation in recordable form of the termination of the Leases within thirty (30) days of the termination of the Leases.

### COUNT III – TERMINATION OF THE LEASE AGAINST CHESAPEAKE AND ENCINO

57. Article VII, Section 7 of the Leases provides in pertinent part:

> 7. **Assignments**
> The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any horizon, subject to the written consent of the Lessor...No assignment by Lessee (or any assignee of Lessee) of all or any part of or interest in this Lease shall relieve Lessee (or any assignee of Lessee) of any liability for breach of any covenant, warranty or other obligation of Lessee hereunder, whether theretofore or thereafter accrued... Notwithstanding any assignment by Lessee of a segregated portion of this Lease, default by Lessee or any assignee or subassignee of Lessee in any covenant or condition in this lease shall constitute default as to the entire Lease. Lessee shall notify Lessor of such assignment and furnish Lessor a true copy of any assignment.

58. On July 30, 2018, Chesapeake requested CTF, Ltd's consent to its intended assignment of all of its right, title and interest in the Lease and any wells associated with the Lease to EAP Ohio, LLC ("Encino") pursuant to the express terms of the Lease. See July 30, 2018 Letter attached as Exhibit J.

59. Upon information and belief, Chesapeake similarly requested the consent of the other Plaintiffs to the assignment to Encino on or about July 30, 2018.

60.     On August 24, 2018, Plaintiffs asked Chesapeake to furnish a true copy of the assignment as required by Section 7, Article VII, which says, in pertinent part: "Lessee shall notify Lessor of such assignment and furnish Lessor a true copy of any assignment." See August 24, 2018 Letter attached as <u>Exhibit K.</u>

61.     Chesapeake never furnished Plaintiffs a true copy of the assignment to Encino; thereby breaching an express term of the Lease and defaulting in its obligations under the Leases.

62.     Plaintiffs never consented to the assignment of the Leases from Chesapeake to Encino; so, the attempted assignment is ineffective.

63.     Section 7 of Article VII of the Lease expressly states: "Notwithstanding any assignment by Lessee of a segregated portion of this Lease, default by Lessee or any assignee or subassignee of Lessee in any covenant or condition in this lease shall constitute default as to the entire Lease."

64.     Defendants' failure to furnish a true copy of the assignment constitutes a default as to the entire Lease.

65.     Plaintiffs' August 24th letter provided notice to Chesapeake of its obligation under the express terms of the Lease to furnish a true copy of the assignment and provided Chesapeake an opportunity to cure its default. More than 45 days has passed since that notice.

66.     Chesapeake did not cure the default, thereby entitling Plaintiffs to terminate the Leases.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an Order and Judgment against Defendants as follows:

A.     Awarding damages including, but not limited to, interest at the rate provided in the Leases, against Defendants Chesapeake Exploration, LLC and Chesapeake Operating, LLC, and

their affiliated entities, for the time period from the date of first production under the Leases to the date of last production under the Leases before Chesapeake's assignment of the Leases to Encino and against Defendants Encino Acquisition Partners, LLC, Encino Energy, LLC, Encino Operating, LLC, and their affiliated entities, for all time after the date of the assignment to the present;

B. Granting Plaintiffs all attorney fees, investigation charges, court costs, and expert fees expended in prosecuting this action, as provided for in Article II, Section 9 of the Leases;

C. Declaring that the Leases require payment of royalty on "Gross Proceeds", on full production, including fuel, and without deduction of GCDTP Costs;

D. Ordering the Leases terminated;

E. Ordering the Encino Defendants, as current Lessees, to provide Plaintiffs documentation of the termination of the Leases in recordable form and to surrender the Leased Premises as provided in Article II, Section 8 of the Leases; and

F. Granting such other relief as this Court may deem just, equitable and proper.

**ATTORNEYS' LIEN CLAIMED.**

Rex A. Sharp OBA#011990
Barbara C. Frankland OBA #33102
REX A. SHARP, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
bfrankland@midwest-law.com

Counsel for Plaintiffs